

May 25, 2021

Hon. R. Brooke Jackson
United States District Court
Alfred A. Arraj U.S. Courthouse
901 19th St.
Denver, CO 80294
<u>Via ECF Only</u>

    Re:    *Clingman v Drive Coffee, Inc.* 1:20-cv-01485 (RBJ)
            <u>Notice of Intent to File Motion for Summary Judgment</u>

Your Honor:

As per this Court's individual practice rules, we hereby notify the Court, no later than 21 days before the June 15, 2021 dispositive motion deadline, of the Plaintiff's intent to file a motion for summary judgment.

<u>Narrative</u>
The heart of this wage nonpayment claim is the concept of "suffer or permit," the FLSA's equivalent of an admonition to employers that they cannot "have their cake and eat it too." 29 CFR § 785.11, 13. Defendants wanted to have the benefit of the Plaintiff's services but not pay him wages to do so. That just won't do.

Defendant Alex Grappo is the founder of Drive Coffee, a Denver-based startup company that seeks to rival the likes of Red Bull and other widely available energy and coffee products with its racecar-themed coffee offerings. Adopting an entrepreneurial "build the bicycle while you're riding it" approach, Mr. Grappo plunged forward with certain aspects of building his new venture, while completely neglecting certain others – such as filing any tax returns[1], or paying workers, including the Plaintiff. He has failed to take responsibility and abide by various laws as he embarked on this journey, and now it's catching up with him.

In this case the New York-based Plaintiff worked for Colorado-based Defendants for a disputed number of months in 2019-2020. There is no dispute of fact that a mutual acquaintance introduced Mr. Clingman and Mr. Grappo and that in around the summer of 2019 they discussed him coming

---

[1] Grappo Dep. 63:16-64:7, 81:23-82:6 (has not filed personal taxes for years 2017-2020; Drive has never filed any tax returns)



on board with Drive. The nature of his responsibilities were to be marketing related, based largely on his experience working for Red Bull. There is also no dispute that Defendants invited Plaintiff along with approximately half a dozen other executive-level individuals to fly out to Colorado in mid-September in order to attend a "kick-off" meeting in Aspen, tour the Drive facilities in Denver, and get to know the other members of this newly formed team. The Plaintiff understood from all of this that he had been hired and that his rate of pay was $150,000 or thereabouts because of his discussions with Mr. Grappo and seeing this figure in documents presented to outside investors. Reading between the lines, the Plaintiff and others did seem to understand that some of the funding from outside investors had been unexpectedly delayed. Mr. Grappo assured him that payment was forthcoming, and he believed that. He continued to focus on his work, trying to do the best he could for the company, and not unreasonably assuming that he would in fact be paid. In fact, at some point the Defendants did pay him a little bit. Eventually, however, this work-for-no-pay arrangement reached a breaking point. Mr. Clingman simply could not justify continuing to work for the Defendants without being paid, and stopped working for them in April, 2020.

At summary judgment, there are several issues that can and should be established as a matter of law:
- Plaintiff's "Employee" Status: This forms the crux of the dispute between the parties
- FLSA coverage: Defendants might stipulate to this to avoid motion practice on it, but they did not make the admission in their Answers
- NYLL coverage: Similarly, Defendants might stipulate to this to avoid motion practice, but if they don't we can establish it as a matter of law
- Defendants' "Employer" Status: We do not expect that if the above are met that this will remain an issue; however, to the extent that Defendants do not stipulate to both Defendants' status as "employer" under the FLSA and NYLL, this can be established as a matter of law based on the undisputed facts

<u>EMPLOYEE STATUS</u>
From a legal perspective, one of the pivotal issues is whether the Plaintiff was an "employee" as that word is defined in state and federal wage law. Defendants contend he was not, using the somewhat circular logic that since Plaintiff did not receive regular biweekly paychecks or W2s that he could not have been an employee. Then again, at least as of the date of the Defendant's deposition in April 2021, Defendants had never had any "employees" at all, as he defined the word, despite having active coffee distribution activities in place.

Defendants attempt to retroactively characterize his employment tenure as them essentially engaging in a multi-month interview process whereby they hoped to be able to hire the Plaintiff and others someday. The problem is, meanwhile he was actually working. The Defendants "suffered or permitted" the Plaintiff to work all that time. They sent him on business trips. They gave him a Drive email address. He worked on projects, designed to further Drive's business. He communicated with Grappo and other team members on a regular basis. A rose by any other



name would smell as sweet – the Plaintiff was working for the Defendants, and should have been classified as an "employee."

While there are some factual disputes about certain aspects of this employment relationship (such as duration and hours worked), the question as to whether the undisputed facts and/or facts as set forth by the nonmoving party show the Plaintiff to have been an "employee" is a legal one. Establishing this should facilitate resolution, or if not then at least a streamlining of the issues to be litigated at trial.

### FLSA Coverage
Plaintiff can also establish FLSA coverage.  It is anticipated that there would not be dispute about the first prong of "enterprise coverage" regarding the interstate nature of its business (29 U.S.C. § 203(s)(1)(A) and 29 C.F.R. § 779.238). Defendants have contested the second prong, contending that they allegedly grossed less than $500,000 per year at relevant times. First, there are no tax returns to support or refute their contention because Drive hasn't filed any. Their books are a mess and a work in progress. It's not clear they can rely on that as "proof" that they made less. However, even if it were the case (*arguendo*) that their income was less than $500,000, there are sufficient undisputed facts that support "individual coverage." For starters, the Plaintiff performed the vast majority of his work in New York, while he was in regular communication with the Defendants and other team members via phone, internet, and text. 29 C.F.R. § 776.10. He came to Colorado several times, and went on Drive business trips to places like Texas and California.

### NYLL Coverage
The Plaintiff originally filed this case to include alternative theories of relief under the Colorado Wage Acts or the New York Labor Law ("NYLL"). By agreement, Plaintiff agreed to dismiss the Colorado wage claims without prejudice, based on the location of the Plaintiff's work. Defendants appear not to dispute that, assuming he is found to be an "employee," that the Plaintiff is covered by the NYLL.

### Employer Status
If the FLSA and NYLL apply and the Plaintiff was in fact an "employee," both defendants would also be his "employers." Applying the law to the undisputed facts, we can establish this at summary judgment so it need not be litigated at trial.

Sincerely,

Penn Dodson, Esq.
*penn@andersondodson.com*