# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01485-RBJ

KEITH CLINGMAN,

    Plaintiff,

v.

DRIVE COFFEE, LLC, DRIVE COFFEE, INC. and ALEX GRAPPO,

    Defendant(s).

## Notice of Intent to File a Motion for Summary Judgment

To the Honorable R. Brooke Jackson, Plaintiff Keith Clingman and his Counsel of Record:

    Defendants Drive Coffee, LLC, Drive Coffee, Inc. (together, "Drive" or the "Company") and Alex Grappo (collectively the "Defendants") hereby provide a notice of intent to file a motion for summary judgment on the claims asserted against them by Keith Clingman under the FLSA and New York Labor Laws.

### Factual Summary

    Defendant Alex Grappo founded Drive Coffee in a true start-up fashion. Mr. Grappo had a vision to position his Company at the top of the coffee market with a niche for coffee drinkers who love classic cars and racing. Plaintiff was introduced to Mr. Grappo by a mutual friend in the very early days of Drive Coffee's existence. Mr. Grappo told Plaintiff his vision for Drive Coffee and Plaintiff was very excited, and considering he was unemployed, eager to jump on board with the promising start up company. Mr. Grappo cautioned him that the Company did not have the resources to bring on a Chief Marketing Officer at the time, but that he believed he had serious investors interested in the Company and Plaintiff expressed a desire to be a part of the Company once funding came in. Mr. Grappo and Plaintiff discussed what an appropriate future salary might be at that time and how Plaintiff's background might be able to benefit the Company. Mr. Grappo believed that he and Plaintiff had become friends and they began to communicate regularly. Mr. Grappo understood that Plaintiff was performing consulting work for other companies during this time and did not think that Plaintiff believed himself to be an employee of Drive Coffee. Plaintiff never completed a W-4, was never signed up for payroll, or any other marker of employment. Plaintiff occasionally provided feedback on an idea for Drive, but much of their communication was friendly banter about cars, internet memes, weekend plans, and the like. Mr. Grappo paid for Plaintiff to attend a car race in Mexico with him, and brought Plaintiff to Colorado a couple of times to discuss future plans. Plaintiff frequently inquired from Mr. Grappo as to the status of potential investments and when Plaintiff (and others, including the mutual friend who introduced them), might be able to "get started." As Mr. Grappo was grinding away to secure investors for Drive, so that he could actually hire an executive staff, Plaintiff became impatient and eventually disgruntled. He believed that he could run the business better than Mr. Grappo and that his ideas were not being taken seriously. He eventually told Mr. Grappo that he could wait no longer to start his position and begin getting paid. Mr. Grappo told him that he simply was not in a position

to hire him yet, as the investors that had committed had not yet made their investment. Only then did Plaintiff tell Mr. Grappo that he was owed "back pay" and that he was "an employee." Plaintiff's deposition testimony does not align with his communications at the time with Mr. Grappo or the other prospective members of the team (none of whom were employees, but similarly were acquaintances of Mr. Grappo's). While Mr. Grappo wanted to bring Plaintiff on as an employee, he simply was unable to do so until he received outside investment. When Plaintiff brought to Mr. Grappo's attention that he was struggling financially, Mr. Grappo transferred money to him via paypal, venmo and zelle. Plaintiff did not report these amounts as income on his taxes, and understood that they were not the result of the Company's hiring him. Instead, his communications at the time reflect that he understood Mr. Grappo was trying to help tide him over financially. At no time did Mr. Grappo tell Plaintiff not to seek employment opportunities elsewhere.

At best this case is a breach of contract case that Plaintiff is trying to shoehorn in under federal and state laws designed to protect laborers from exploitation. Plaintiff cannot show that a contract was formed between the parties (at most, there was an agreement to agree in the future).

The FLSA claims turn on whether Plaintiff was an employee of Drive Coffee. And, if Plaintiff was an employee of Drive Coffee, whether he is covered by the FLSA. Defendants believe the undisputed facts of the case show that *if* Plaintiff was an employee of Drive Coffee for any period of time, he was an exempt employee. Defendants further dispute Plaintiff's state law claims, however, the facts that that determine many of the FLSA issues will also be determinative for the NYLL claims. Finally, Plaintiff cannot show that the parties entered into a contract for which he is owed damages.

## Plaintiff was Not an Employee

While the definition of "employee" and "employer" are broad under the FLSA, they are not without limits. Plaintiff did not have a set work schedule, was not required to report at any given time, did not prepare onboarding paperwork, did not ever receive a regular paycheck. Most importantly, Plaintiff's contemporaneous communications with others that were awaiting the Company's investments reflect that Plaintiff knew he was not yet an employee. He continuously asked other mutual friends and members of the prospective "team" whether they'd heard about investment coming in, whether they'd heard a date about when they'd all be able to "get started" and other preliminary issues. Plaintiff was never hired by Defendants, was never provided with onboarding paperwork (including an offer letter, W-4, employee handbook or manual, etc.). Defendants did not provide any control or oversight of Plaintiff's purported activities on behalf of the Company, or require specific activities from Plaintiff. Plaintiff's travel with Mr. Grappo was never required—always optional and was focused on social activities. Plaintiff did not have a Company email address until he requested it. While Plaintiff now claims that he was not providing consulting services for other companies, Mr. Grappo believed that he was. Those undisputed facts go to the factors articulated in 10th Circuit cases in determining employee status under the economic realities test, and weigh in favor of a non-employee relationship. *Powers v. Emcon Associates, Inc.*, 2017 WL 2075766, *5 (D. Colo. Sept. 14, 2017).

## Plaintiff Cannot Show FLSA Coverage

Even if Plaintiff was an employee of Drive as that term is defined by FLSA, he is not covered by the FLSA. Plaintiff claims wages for September 2019-March 2020. Drive's financial records prepared by Drive's accountants and produced pursuant to subpoena in this matter establish that Drive was not covered as an enterprise under the FLSA during 2019 as its revenues were well below $500,000. Further, for 2019, Plaintiff cannot establish individual FLSA coverage either. In the 10th Circuit, "an employee must directly participate in the actual movement of persons or things in interstate commerce." *Reagor v. Okmulgee County Family Resource Center*, 501 Fed. Appx. 805, 809 (10th Cir. Nov. 14, 2012). Plaintiff communicated with Mr. Grappo by text and phone, but those communications, by and large were not related to the production and sale of coffee, which is Defendants' business, or even an actual marketing plan for Drive Coffee (which was Plaintiff's purported job duty). *Id.* ("in assessing individual . . . coverage, Congress intends to regulate only activities constituting interstate commerce, not activities merely affecting commerce"); see also, *Harlas v. Barn, LLC*, 2021 WL 1661207, *3 (10th Cir. Apr. 28, 2021)(denying individual coverage where plaintiff relied on mechanisms of interstate commerce she used for something other than her employment with defendant). As a matter of law, Plaintiff cannot show that he was involved in interstate commerce such that he is covered on an individual basis by the FLSA.

### If Plaintiff was an Employee, He was an Exempt Employee in 2020

If Plaintiff is determined to be an employee, he is exempt from FLSA as a "highly compensated employee." It is undisputed that the parties agreed that when Plaintiff became an employee his salary was to be $150,000/year, well above the current exemption threshold of $107,432. Further, Plaintiff was in fact paid $25,000 over the course of 20 weeks, equaling out to $1,250.00/week, again well over the statutory floor of $684/week. "Evidence that an employee is highly compensated 'is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties.'" *Wilson v. Schlumberger Technology Corporation*, 2019 WL 1916200, *2 (D. Colo. April 24, 2019)(quoting 29 C.F.R. § 541.601(c)). Although not required, an analysis of Plaintiff's proposed job duties not only bolsters his exemption as a highly compensated employee, but reveals that he also qualifies for the administrative exemption. Plaintiff's proposed title was Chief Marketing Officer, and he was to be tasked with the development of the entire marketing program and management of all social media. Drive and Mr. Grappo expected Plaintiff to take ownership of the marketing department, determining which events would best showcase Drive's products and fit with the brand and begin developing relationships with corporate buyers as well as mold the Company's social media branding. He was granted authority commiserate with his executive title and was expected to step into the role.

Dated this 25th day of May, 2021.    Respectfully submitted,

/s/ *Lisa N. Nobles*_____
Sussex Law, LLC
1430 Larimer Street, Suite 307
Denver, CO 80202
Tel. (720) 223-6525; lnobles@sussexlawfirm.com

3

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of May, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

penn@andersondodson.com


                                          *s/     Lisa N. Nobles*