# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

**Civil Case No. 1:20-cv-01485-RBJ**

**KEITH CLINGMAN,**

**Plaintiff,**

**v.**

**DRIVE COFFEE LLC, DRIVE COFFEE INC,**
and **ALEX GRAPPO,** an individual,

**Defendants.**

---

## PLAINTIFF'S AMENDED RESPONSES TO DEFENDANTS'
## FIRST INTERROGATORIES

---

Comes now the Plaintiff and provides the following responses to Defendants' First Interrogatories, pursuant to Fed. R. Civ. Proc. 33, as follows.

### GENERAL OBJECTIONS AND QUALIFICATIONS

1.    The Plaintiff objects to each and every interrogatory to the extent that it would require the Plaintiff to respond by disclosing his attorney's or any other of their representatives' mental impressions, conclusions, opinions, computations, calculations, projections, reasons, legal theories, other work product or the like, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure (objection on the ground of "work product").

2.    The Plaintiff objects to each and every interrogatory to the extent that it, whether standing alone, or taken in conjunction with any and all other interrogatories, is calculated, or would operate, to annoy, embarrass, oppress, unduly burden or unduly cause expense to the Plaintiff or would be unduly vexatious or unduly burdensome to respond to, on the ground

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure (objection on the ground of "undue burden").

3.   The Plaintiff objects to each and every interrogatory to the extent that it requires the Plaintiff to respond by acquiring or supplying information which would be irrelevant to the subject matter or issues of this action, and not reasonably calculated to lead to the discovery of admissible evidence, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure (objection on the ground of "relevance").

4.   The Plaintiff objects to each and every interrogatory to the extent that it would require Plaintiff to respond by waiving their attorney-client privilege, on the ground that said interrogatory exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure (objection on the ground of "privilege").

5.   Without waiving or prejudicing their rights to assert these general objections or any other objections which may be set forth herein, and in a good faith effort to provide the information available to the Plaintiff at this stage of the discovery and the investigative process in this litigation, the Plaintiff will provide responsive and non-objectionable information now available with regard to certain of the interrogatories.

6.   Insofar as any of the Defendants' interrogatories seek information to which the foregoing General Objections apply, specification of or failure to note particular General Objections is not a waiver of those or other General Objections with respect to any interrogatory.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                         P's Resps to Ds' Rogs
USDC, District of Colorado                                                      Page 2

<div style="border: 2px solid black; text-align: center;">

## INTERROGATORY RESPONSES

</div>

1.

**INTERROGATORY:** Describe in detail each communication between you and Alex Grappo (when, where, mode of communication, length of communication, others present) in which Mr. Grappo made you an offer of employment and the terms of the offer(s), including starting date, duties, salary, reporting structure and any other terms that may have been included.

**RESPONSE:**    *Plaintiff responds as follows:*

This conversation started on Aug. 9th, 2020, at 10:02am through text. The night before, I had met [Defendant] Alex [Grappo] for the first time for an interview over dinner with him, Jonathan Lloyd-Jones and Becky Moody at Narcissa in the East Village, NYC.

In this text, Alex expressed that he had enjoyed the time we spent together the night before and that he could use my "help and experience on this journey" [P000008]. He went on to say that "We need someone that will really shape the marketing culture and essentially create our playbook for the customer experience going forward. This will for sure be one of the most important things at Drive, and the way we interact with customers and define our experience will ultimately become a huge part of our brand and who we are. If you're up for it, would love to chat some more about what it would take to make that happen."

We then agreed to talk on the phone to discuss the details and agreed to talk at 2:30pm EST that day. [P00138]

On that call on Aug. 10th [2020], which lasted 59 minutes [P00503], Alex said that he would like to bring me on board as the Chief Marketing Officer for Drive. He mentioned that I would work alongside Lindsey Orridge, who was being hired as the Chief Communications Officer, and he mentioned that our skill sets and backgrounds would complement each other well.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
*www.AndersonDodson.com*

*Clingman v. Drive Coffee*
USDC, District of Colorado

P's Resps to Ds' Rogs
Page 3

We talked about my skillset as a generalist marketer who understood the breadth of marketing at a beverage company and how that put me in a position to lead marketing efforts as a whole, with Lindsey focusing on her areas of expertise which were public relations and motorsports. He also noted how my generalist skillset would allow me to work well in collaboration with the Chief Sales Officer, Remy Castillo.

He asked what my expected salary range would be. I told Alex that I'd like to think about this and come back to him.

On Aug. 13th, I texted Alex to see if he was free for a call [P00139]. On this call, I planned to present Alex with my request for the total compensation package for me, including the salary and amount of equity that I would like at Drive. We agreed to talk at approximately 4:05pm EST. I called Alex then but he did not answer.

On Aug. 14th, Alex texted me to apologize for missing my call the day before and to see if I could talk that day [P00140].  I was traveling and asked him if I could text him later in the day to coordinate, once I landed from a flight. We ultimately decided through text that the next day, Aug. 15th would be best. I texted Alex on Aug. 15th to see what time was good for him to talk and did not get an answer.

He called me back on Aug. 16th and, as a follow up to where we left the conversation about compensation on Aug. 10th, we discussed the compensation package that I would like for the role of CMO at Drive.

I told Alex that the market rate for a role like that for someone with my experience was likely above what a startup could pay ($200k+), so I told him that I was willing to accept a salary in the range of $150k-$190k with equity making up for the salary shortfall so long as he agreed to meet the market-rate salary once the company had grown, likely in the next 12-16 months.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
USDC, District of Colorado

P's Resps to Ds' Rogs
Page 4

Alex expressed that this was well within reason and that he was confident that he could meet that. He used an example of a story he had heard about how Amazon employees came into the company at a certain salary and then never went up in salary after that and said, "We won't do you like Amazon. This would be a starting salary that would go up to market rate or beyond."

He also talked about benefits and said that "Becky (Chief of Staff) will be setting up the benefits package and I've told her that we will only offer the best and most comprehensive benefits packages. To put it bluntly, no one from Drive will ever have to pay out of pocket for any medical costs." He also added that there would be unlimited vacation days for every employee of Drive.

Alex asked me to think about the amount of equity in the company that I would be happy with and we agreed to follow up at a later date to talk about that part.

To end the conversation, Alex said that he was finalizing things with investors in the coming weeks and that we would be looking at a Sept. 1st – Sept. 15th start date, or shortly thereafter, depending on when he received the investor's money. He expressed that he would like to bring the entire team (myself, Remy Castillo, Vania Austin, Becky Moody, Lindsey Orridge) to either Colorado or California to kick things off around that date, meet each other, and to sign all paperwork including employment agreements and equity agreements. There were two family friends at my apartment during this call and I talked with them about the call immediately afterwards.

On Sept. 2nd, I texted Alex to inquire about the dates for our kick-off trip because I still did not have details. He responded, "Right on. I'm waiting on confirmation from our guy, will let you know ASAP." [P00141]

On Sept. 3rd, I texted Alex, "Hey Alex, you have some time to talk equity #s?" and he responded, "For sure" [P00141]. We had a conversation on or about that day where I expressed to

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

Alex that I would want between 4%-7% equity in the company as part of my total compensation. He said that he was confident that he could meet that.

He said that he would have all paperwork, including employment agreements and equity agreements with salary and equity amounts, by our team gathering in early September. Alex said the date was TBD, but that this would be within the coming week or two.

On Sept. 7th, Alex texted me while I was on a trip to Montreal, "I'm renting some space at a ranch for the whole team, we'll all be out over the weekend and kick things off and get to know each other as a team and conclude with our meetings during the week." [P00142].

On Sept. 13th, I flew to Aspen, CO, for the kick-off trip. On this trip, Alex told me, and the team, that he did not yet have the employment agreements or equity paperwork, but that he would have both, and that we would receive our first paychecks, by Oct. 1st, including retroactive pay to Sept. 13th. He also expressed to us that there was a brief delay with the investor's checks, but that he was confident that those would be to him "any day now". Alex also confirmed to me verbally and individually while on that trip on or around Sept. 17th, that my starting salary/equity would be within the range of $140k-$190k and 4%-7% equity that we had talked about on Aug. 16th. He also confirmed that it would be back-paid to the starting date of Sept. 13th. This conversation took place as we were leaving a team meeting at WeWork in Denver.

On or around Oct. 1st, the team was asked to travel to Denver for a meeting with a key investor. During that trip, we were again told as a team that there was just a slight delay with another investor's check but that employment agreements, equity agreements and paychecks (including backpay) were shortly to come once that check was received.

On Oct. 15th, in response to a question Lindsey Orridge asked in a WhatsApp chat about when we could expect to receive our employment and equity contracts, Alex replied "Yes! All on

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

Clingman v. Drive Coffee
USDC, District of Colorado

P's Resps to Ds' Rogs
Page 6

track! Updated stock agreements (with options instead of stock so you all don't have to pay a fortune in taxes this year) going out today."  [P00503].

On or around Oct. 20th, I was asked by Alex to travel to Los Angeles for meetings with investors. After Alex picked me up at the airport that day, and while we were waiting in line at the rental car location, I confronted Alex about the fact that we still did not have employment or equity agreements, nor had we been paid. In this conversation, Alex pleaded with me to give him just another week and that he would have everything wrapped up, and he expressed that the money from an investor had just been tied up temporarily. Alex asked me to "please just be transparent with me. I don't want to, and can't afford to, lose you from this team. Let's just agree to be open with each other and I'll get you what I can for now while we wait for the investor checks to come in." He promised that the investor's money would be to him, and that he would pay me, but Nov. 15th at the latest, but likely by Nov. 1st [P00233-P00234]. Alex reiterated that once the investor's checks were received that I would be paid my salary moving forward, as well as full back pay. At the rental car location, we also discussed that I was currently paying out of pocket for my COBRA health/vision/dental insurance and that I would just expense this to Drive until our company health insurance plan was set up. Alex agreed to this.

On or around Nov. 19th, 2019, I traveled with Chief Communications Officer Lindsey Orridge for a Drive Coffee event in Baja, Mexico, to support the racing team of one of our investors and our activation around that. During the time that we were there, me and Lindsey cornered Alex to hold him accountable for continually missing the deadlines (specifically the Nov. 15th deadline) he had given us to have employment agreements, equity agreements and payments (including back pay to Sept. 13th) and to communicate to him that we would have to quit our roles if he was not able to commit to start paying us before we left that trip. [P00233-234].

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                                      P's Resps to Ds' Rogs
USDC, District of Colorado                                                              Page 7

Alex committed to getting us paid for October and finalizing employment/equity agreements immediately. While I was at the airport heading back home from this trip, Alex called me to confirm the salary of $160,000 and 4% equity. [P00254-259]

On Nov. 27th, Alex wired me $13,300, the equivalent of one full month's salary for the month of October.

2.

**_INTERROGATORY_**: Identify each communication, document, and fact, which support your allegation in paragraph 27 of your First Amended Complaint that "Plaintiff Clingman's compensation arrangement with Drive was that he was to be paid a salary at a rate of $150,000, a 4% equity stake, benefits, and unlimited vacation days."

**RESPONSE:** See response to Interrogatory No. 1. Plaintiff incorporates that response in its entirety by reference, specifically reiterating the following:

- Text from Alex on Aug. 9th saying that he wanted to bring me onto the team and explaining where he saw my role in the company

- Text from Alex on Sept. 7th stating that he was bringing the team to Colorado in the coming week to kick things off

- The times that Alex did pay me were approximately the equivalent to a monthly payment of $13,300, which is the equivalent of $160k p/ year

- Drive planning document that shows CMO salary as $150k p/ year with monthly costs of $12,500

- Text to Alex on 9/3 that said "Hey Alex, do you have some time today to talk equity #'s?" (detailed in section 1)

- WhatsApp message from Alex to team on Oct. 15th stating that he would have employment and equity agreements "today"

- Email thread with Alex in April re: the nature of my role and job, as well as salary and expenses that were owed to me dating back to Sept. 2019

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
USDC, District of Colorado

P's Resps to Ds' Rogs
Page 8

3.

**_INTERROGATORY:_** Identify each communication, document, and fact, which support your allegation in paragraph 28 of your First Amended Complaint that "Plaintiff was wholly unpaid for several months of his employment."

**RESPONSE:**  *Plaintiff responds as follows:*

From Nov. [2019] forward, I had consistent and frequent verbal conversations through phone

and in person with Alex about the fact that we were still not being paid, and did were still owed

back-dated to Sept. 13th. These conversations were re-iterated in the April /May 2020 phone and

email convos I had with Alex demanding that he pay me. It is impossible for me to remember

each and every conversation as there were many.

*Following are some instances that Plaintiff can recall, reserving the right to supplement:*

- On Oct. 20th 2019, while at the airport car rental location, I had a verbal conversation with Alex expressing my displeasure at the fact that we had not been paid since our Sept. 13th start date/trip [*See Response to Interrogatory No. 1, supra*].

- On or around Nov. 19th 2019, while in Baja California, Mexico, for a work trip, myself and Lindsey Orridge cornered Alex and told him that if we were not paid by the end of that trip, and paid consistently moving forward, that we would likely be forced to walk away from Drive [*See Response to Interrogatory No. 1, supra*].

- On April 13th, 2020, I e-mailed Alex stating that I could no longer defer my salary as a follow up to a phone conversation we had the previous Thursday [*See Response to Interrogatory No. 2, supra*].

- On April 14th, 2020, and in a continual email thread lasting through early May, I e-mailed Alex detailing what I was owed including missing salary and out of pocket travel and healthcare expenses [*See Response to Interrogatory No. 2, supra*].

4.

**_INTERROGATORY:_** Identify the dates for which you contend you were an employee of Drive Coffee and describe in detail the duties you performed during that time.  If your duties changed during the period you contend you were an employee, please identify the periods of time for each set of duties.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                              P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                              Page 2

**RESPONSE:**  *Plaintiff responds as follows:*

Dates of Employment:          Sept. 13th, 2019 – April 23rd, 2020.

Duties Performed:

- Joined Drive CEO (Alex Grappo) for meetings with investors and key partners and helped inform materials given to them in an effort to build trust with each while securing maximal investment and partnership from them

- Acted as voice of marketing and sales for company, informing Drive CEO Alex Grappo and investors of executive-level marketing, sales and industry insights and information, including:

  o  Industry and market insights

  o  Product development

  o  Consumer trends

  o  Company road-mapping

- Worked alongside Drive leadership team and certain investors to ideate, strategize and build company plans and programs

- Created comprehensive U.S. marketing strategies to build brand equity and increase demand and sales across the country both digitally and physically, including:

  o  Route-to-market strategy, including pricing, distribution and retailer strategies

  o  Brand strategy, including identifying target consumers and building plans to create awareness, affinity and purchase from these consumers through brand positioning

  o  Communications strategy, including social media, brand communications, PR

- Created route-to-market strategies to ensure that Drive had optimal distribution, visibility and profitability

  o  Created route-to-market launch plan for the 2020 national launch of Drive Coffee

  o  Researched and selected channels and retail partners

- Assisted with vendor and retailer relations for select partners, including:

  o  New distribution partnerships and marketing programs (e.g. Macy's, Bespoke Post)

  o  Barcode and product labeling

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 3

- Assisted with warehouse operations and order fulfillment for key programs, company events and meetings

Timeline of Duties/Roles:

- Chief Marketing Officer - Sept. 13th, 2019 to Nov. 7th, 2019

- Chief Sales & Marketing Officer – Nov. 7th to April 23rd, 2020

5.

**_INTERROGATORY:_** Identify and describe in detail each communication between you and Alex Grappo or any other representative of Drive Coffee in which you discussed the Company's expectations of you, including required work hours, required work locations, required deliverables (including but not limited to, reports, presentations, analyses, plans, projections and targets) and the deadlines for same.

**RESPONSE:** *Plaintiff objects to this Interrogatory on grounds of ambiguity and overbreadth. However, in a good faith effort to respond, Plaintiff states the following:*

This was an ongoing conversation and process. A few specific conversations related to this are:

- Interview conversation on Aug. 9th at Narcissa where Alex talked about needing someone with a well-rounded background in both marketing and beverage. He expressed that he was trying to build the "Red Bull of coffee" and that my role at Red Bull as a generalist marketer who had knowledge and experience with sales and distribution is what he was looking for. [*See Response to Interrogatory No. 1, supra*].

- Text from Alex on Aug. 10th saying what he was looking for in a CMO and the role that this person would play at Drive [*See Response to Interrogatory No. 1, supra*].

- Phone call with Alex on Aug. 10th where he discussed in depth my role and what he needed out of it. [*See Response to Interrogatory No. 1, supra*].

- Phone conversation with Alex prior to team trip to Colorado in Sept. 2019 where he asked me to put together a list of marketing topics to be discussed at the team meetings

- Phone conversation with Alex on or around Nov. 7th, 2019, discussing the departure of Remy Castillo and Alex asking me to take over the sales function, which including laying the roadmap, strategy and plan for the national launch of Drive Coffee in early 2020

- Phone conversation with Alex in or around Dec. 2019 in which he told me that he wanted me to build a route-to-market plan to be presented at our end of year team meeting in Denver

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 4

- Phone conversation with Alex where he asked me to be the lead on the upcoming distribution partnership with Macy's

- Phone conversation with Alex where he asked me to assist a digital marketing consultant with Amazon distribution

- Several and frequent conversations with Drive investors (specifically John Lloyd-Jones and Jim Bauer) about their expectations for the company and my role, as well as what I would be able to deliver in my role (specifically securing national distribution in 2020)

- Several conversations with Alex between Aug. 9th, 2019 and December, 2019, about my ability and/or willingness to move to Denver, or to travel to Denver as needed for company business

- Several and frequent conversations with Alex and investor John Lloyd-Jones about Drive Coffee having a NYC-based location where I would work from

6.

**INTERROGATORY:** Identify any entity of which you have been an owner or partial owner or member from January 2017 to the present (not including companies in which you hold less than a 2% interest) and the percentage of your ownership for each identified entity.

**RESPONSE:**

LKC Ventures LLC, 100% ownership, Feb. 2017 to present.

Prior to employment with Drive: Studio 7 Creative LLC, 33.33%, dissolved in 2018.

7.

**INTERROGATORY:** Identify any services you performed for any person or entity other than Drive Coffee, for monetary compensation, from March 2019 to the present.

**RESPONSE:**

Objection on the ground that this Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's employment subsequent to that with Defendants has no bearing whatsoever on his claims to pay earned during his employment with Defendants. As such, any inquiries into other employment could only be used to harass, intimidate, or otherwise interfere with Plaintiff impermissibly. See *Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536,

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                                P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                                                      Page 5

539-540 (D.N.Y. 2005); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir.

1995); *Zenian v. District of Columbia*, 283 F. Supp. 2d 36, 40 (D.D.C. 2003), *Byrne v. Gainey*

*Transp. Services, Inc.*, 2005 WL 1799213 (D. Kan. 2005).

Plaintiff further responds that prior to working for Drive, he worked as the Director of

Marketing for beverage brand Recess from June 2019 – July 2019.  He did not perform services

for monetary compensation for any entities other than Drive during his dates of employment with

Drive.

8.

**INTERROGATORY:**  Identify and describe any activities you took to seek employment positions, formally or informally from January 2019 to the present, including, but not limited to, resumes sent (solicited or unsolicited), positions you applied for directly through LinkedIn, Monster, Indeed, industry-specific websites and list serves, communications with recruiters, communications with former colleagues and/or industry professionals.

**RESPONSE:**

*Plaintiff objects to this Interrogatory on grounds of overbreadth and relevance. However,  in a good faith effort to respond to the best of his current recollection, Plaintiff states as follows:*

Following are a few key instances related to this topic below that came after I met Alex [Grappo, in August, 2019]

- Conversation with former Red Bull colleague Kyle Fitzpatrick about possibly working for his company The Feel Good Lab

- Conversation with former colleague at Recess, Dan Holland, about taking a Vice President of Marketing role with beverage company Mad Happy in Jan. 2020

- Conversation with former Red Bull colleague Keith Wescott about a potential role with Nestle on Jan. 14th, 2020

- Conversation with hiring manager for marketing role with Nestle in Jan. 2020

9.

**INTERROGATORY:** Describe in detail your activities on behalf of Drive Coffee during an average workweek.  If you contend that you did not have an "average" workweek, explain why.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                    P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                        Page 6

**RESPONSE:**  *Plaintiff objects to this Interrogatory on grounds of vagueness and ambiguity. However, in a good faith effort to respond, Plaintiff states the following:*

While it varied, during a "typical" week at Drive, my activities might include any or all of the following:

- Daily (or near-daily) dialogue and planning/work sessions through phone, text, email and in person meetings with colleagues including Alex Grappo, Lindsey Orridge, Remy Castillo, Vania Austin and Sarah Mortzfield. Also with investors Jim Bauer, Dan Berg and John Lloyd-Jones and vendors/contractors/partners including our bean roaster, Macy's, Bespoke Post, the UPC company and digital marketers.

- Travel to company meetings, investor meetings and events

- Building and planning sales and marketing strategies and plans

- Talking and meeting with key partners, retailers and vendors

- Coordination, communication and executing plans with key partners, retailers and vendors

- Administrative work including tracking expenses, booking travel, email

- Assist with key order fulfillment and other company needs at company HQ in Denver

10.

***INTERROGATORY:*** Identify with particularity any week in which you contend that you worked more than 40 hours for Drive Coffee and describe in detail the services you contend you performed for any such identified week and the amount of time spent for each activity.

**RESPONSE:**

*Objection on the ground and to the extent that Defendants are or should be in possession, control, or custody of records from which a response to this Interrogatory would be derived. It is Defendants' obligation to maintain complete and accurate records of hours worked, compensation awarded, and deductions made. See 29 C.F.R. § 516.2. If such documents are not available or produced, we would be allowed to calculate damages owed by showing the amount and extent of the work performed "as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Subject to the foregoing, Plaintiff responds as follows:*

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 7

Plaintiff estimates that to the best of his memory at this time there were at least five weeks in which

he worked more than 40 hours in a week. These include trips to Baja, Mexico, for the Baja1000 in

Nov. 2019 and multiple trips to Denver and California for investor meetings, company meetings

for planning or order fulfillment needs between Aug. 2019 – March 2020.

11.

**_INTERROGATORY:_** Describe your procedure for reporting your time and activities to Drive
Coffee in order to be paid.

**RESPONSE:**  There was no such process.

12.

**_INTERROGATORY:_** Identify with particularity and in detail the number of hours for which you
contend you were not paid, describe in detail the dates and times of those hours and the work you
contend you performed on behalf of Drive Coffee in those hours.

**RESPONSE:**

*Objection on the ground and to the extent that Defendants should be in possession, control, or*

*custody of records from which a response to this Interrogatory would be derived.  It is Defendants'*

*obligation to maintain complete and accurate records of hours worked, compensation awarded,*

*and deductions made.  See 29 C.F.R. § 516.2,* and NYLL §661, §195(4), §161(4). *Subject to the*

*foregoing, Plaintiff responds as follows:*

Plaintiff does not have time logs for because Defendant did not maintain a time keeping system or

any kind of requirement for submission of time worked.  Plaintiff estimates that to the best of his

memory at this time there were at least five weeks in which he worked more than 40 hours a week

(as indicated in response to Interrogatory No. 10 above). There are just under 32 weeks from Sept.

13th, 2019 – April 23rd, 2020. The other 27 weeks he estimates he worked between 30-40 hours

a week for an average of about 35 hours a week, depending on the needs at the time.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 8

13.

**_INTERROGATORY:_** Identify any travel that you undertook on behalf of Drive Coffe and describe the details of any such travel including, purpose of the travel, payment of expenses related to the travel, your activities during the travel, whether you were required to complete the travel as part of your relationship to Drive Coffee and how/why you understood that the travel was a requirement as opposed to an option

**RESPONSE:** *Plaintiff responds as follows, to the best of his memory, reserving the right to supplement:*

I took approximately 8 trips between Aug. 2019 – March 2020 to Colorado, California and Mexico specifically for Drive business. These trips were for various reasons including planning meetings, investor meetings, events and to assist with warehouse order fulfillment. At times Alex would book travel for me himself and others I would book and he said through several verbal and text conversations to "keep track of your expenses so I can reimburse you." I understood the travel to be mandatory as it was never a question of whether I wanted to, or could go, but rather came to me from Alex as a "hey, we need you in XX place on XX date."

14.

**_INTERROGATORY:_** Identify and describe any communications between you and anyone at Drive Coffee, including Alex Grappo, in which you were offered any equity shares of the company, including the terms of any such offer (date of award, vesting terms, review of shareholder agreement, etc.).

**RESPONSE:** *See Plaintiff's Responses to Interrogatories 1 and 2, supra, which he incorporates by reference.*

15.

**_INTERROGATORY:_** Identify any contract between you and Drive Coffee and describe the terms of that contract in detail and the ways in which you contend that you performed your duties and obligations under that contract and Drive Coffee breached its duties and obligations under that contract.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                                      P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                                           Page 9

**RESPONSE:** *Objection on the ground and to the extent that this Interrogatory calls for legal conclusions. Subject to and without waiving the foregoing, Plaintiff responds as follows:*

Despite multiple assurances and promises to the contrary (on an almost weekly basis from September 2019 through April 2020), Defendants never provided Plaintiff with a written employment agreement and/or equity/stock agreement. However, the parties entered into verbal and/or implied agreements insofar as Defendants continually reassured the Plaintiff that he would be paid, including back pay to Sept. 14th, and reimbursed for all out of pocket expenses (including healthcare costs), and granted promised equity "once the investor's checks came in." *See also Plaintiff's Responses to Interrogatory 1, which he incorporates by reference.*

16.

**INTERROGATORY:** Describe in detail the circumstances that led to the end of your relationship with Drive Coffee.

**RESPONSE:** *Plaintiff responds as follows:*

I had several phone, email and text conversations starting in March 2020 in which I told [Defendant] Alex [Grappo] that I could no longer accept his word that "payment and contracts were coming" and demanded my back pay and out of pocket reimbursement immediately in April 2020. At that point I told him that I could no longer commit to Drive as a full time employee without a commitment from him to deliver an employment/equity agreement and a consistent bi-weekly paycheck. At first, Alex asked me to just wait a little longer because he was going to have the money. I granted him a couple weeks to work through his issues. When Alex was still not able to deliver what I was owed, after he did receive a check from an investor and then put that money into the business instead of paying me, I told him that I would need to take additional steps to secure what I was owed if I was not paid immediately. At that point, Alex became aggressive and hostile toward me with varying excuses for why he could not pay me. He then told me in an email

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                    P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                    Page 10

conversation in April 2020 that I should no longer communicate through my Drive email account,

which I took to mean I was being terminated.

<center>17.</center>

**_INTERROGATORY:_** Identify any data that has been deleted, physically destroyed, discarded, damaged (physically or logically), deactivated, or overwritten, including social media posts and accounts, that relate to or reference Drive Coffee, Alex Grappo, the subject matter of this litigation or the claims and defenses asserted in the First Amended Complaint or the Drive Coffee Parties' Answer thereto.

**RESPONSE:** *Plaintiff responds as follows:*

My email account, *keith@drivecoffee.com* and coexisting Google Drive, both of which

were shut down by [Defendant] Alex [Grappo] and I no longer have access to.

<center>18.</center>

**_INTERROGATORY:_** Identify with particularity and describe in detail any communications you have had with anyone affiliated with Drive Coffee, including Alex Grappo, since your relationship with Drive Coffee ended related to your relationship to Drive Coffee, Alex Grappo's management of Drive Coffee, Drive Coffee's employment policies, prospective investors, or any other discussion related to the business of Drive Coffee.

**RESPONSE:** *Plaintiff responds as follows:*

I had verbal, text and/or social media conversations with Becky Moody, John Lloyd-Jones,

Lindsey Orridge and Remy Castillo. These conversations centered around our mutual poor

experience with Alex and Drive, including never receiving employment/equity agreements or

payment. [P00001—P00032, P00365-P00516, P01150-P001177]

<center>19.</center>

**_INTERROGATORY:_** Identify with particularity and describe in detail any complaints or statements made by you (even if anonymous) to federal, state and/or local governmental entities or regulatory agencies.

**RESPONSE:** *Plaintiff responds as follows:*

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Clingman v. Drive Coffee*                                                          P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                                              Page 11

I contacted the Colorado Department of Employment and Labor in May 2020 to inquire about how to go about getting unpaid salary and expenses from a Colorado-based employer.

20.

**_INTERROGATORY:_** Describe in detail all facts supporting your allegation in paragraph 60 of the First Amended Complaint that "were a formal contract not found to exist, Defendants have been unjustly enriched by withholding monies that rightfully belong to Plaintiff."

**RESPONSE:** *Objection on the ground and to the extent that this Interrogatory seeks a legal conclusion and/or thoughts and mental impressions of Plaintiff's counsel. Subject to and without waiving the foregoing, Plaintiff responds as follows:*

Alex and Drive Coffee were enriched through both my unpaid work, as well as through using my presence on the team and longstanding employment and experience with one of the world's most powerful beverage brands, Red Bull, to gain attention and investment from investors and other stakeholders.

The Drive Coffee deck presented to investors to secure investment stated that "We are building the Red Bull of coffee" and highlighted my extensive background and successful career with Red Bull. In addition, I was asked to join Alex in many meetings with potential investors. In these meetings Alex used both my presence on the team, as well as my ability to speak to marketing and beverage industry related topics in those meetings, to gain interest, attention and investment from investors. The team Alex had hired was one of the key selling points when Alex spoke with investors.

Lastly, when Drive did receive funds from investors, based off of Alex selling them on the "team", and specifically my presence in the Chief Sales and Marketing Officer role, he used those funds to build and grow the business instead of paying me what I was owed.

ANDERSON DODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 12

21.

**_INTERROGATORY:_** With respect to the concurrently served Requests for Admission, to the extent your response is not an unequivocal admission, state the number of the Request, all facts on which you base your answer and all documents or other tangible things that support your response.

**RESPONSE:** *See Responses to Requests for Admission.*

Dated this **7th** day of **May, 2021.**

ANDERSONDODSON, P.C.

 *s/ Penn Dodson*
**Penn A. Dodson**
*penn@andersondodson.com*
(212) 961-7639
CO Bar Reg No. 54677
14143 Denver West Pkwy.
Suite 100-50
Golden, CO 80401
NY Bar No. 2738250
11 Broadway, Suite 615
New York, NY  10004

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*                                    P's Amend Resp to Ds' Rogs
Case No. 1:18-cv-01135-KLM (D. Colo.)                                    Page 13

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

**Civil Case No. 1:20-cv-01485-RBJ**

KEITH CLINGMAN,

           **Plaintiff,**

v.

DRIVE COFFEE LLC, DRIVE COFFEE INC,
and ALEX GRAPPO, an individual,

           **Defendants.**

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on this 7th day of May, 2021 I caused **Plaintiffs' Amended Responses to**

**Defendants First Interrogatories** to be served by sending to the following email addresses:

    Lisa Nobles
    SUSSEX LAW FIRM
    *lnobles@sussexlawfirm.com*

                      ANDERSONDODSON, P.C.

                      *s/ Penn Dodson*
                      **Penn A. Dodson**
                      *penn@andersondodson.com*
                      (212) 961-7639
                      CO Bar Reg No. 54677
                      14143 Denver West Pkwy.
                      Suite 100-50
                      Golden, CO 80401
                      NY Bar No. 2738250
                      11 Broadway, Suite 615
                      New York, NY  10004

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:18-cv-01135-KLM (D. Colo.)

P's Amend Resp to Ds' Rogs
Page 14