**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Case No. 1:20-cv-01485-RBJ

KEITH CLINGMAN,

    Plaintiff,

v.

DRIVE COFFEE, LLC; DRIVE COFFEE, INC and
ALEX GRAPPO, an individual,

    Defendants.

---

**PLAINTIFF'S REPLY TO DEFENDANTS'**
**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**COMES NOW** the Plaintiff, by and through counsel, and hereby submits his Reply to Defendants' Response [Dkt. 38] to Plaintiff's Motion for Summary Judgment [Dkt. 34], and in support thereof, states as follows:

### I. PROCEDURAL ISSUES

Defendants started their motion by stating that Plaintiff's submissions were too long. We did not read the Court's guidance[1] that way, but instead understood them to encourage conciseness. Counsel for Plaintiff submitted a 15 page motion/brief, and as an exhibit attached a separate 15 page statement of facts that fully cited relevant portions of a number of texts, deposition excerpts, and interrogatory responses within it, in order to avoid the Court having to cross-reference to the external documents. This was not an attempt to circumvent any rules, but rather to (hopefully) make it easier for the Court to review. If this was a misunderstanding of this Court's individual

---

[1] "Summary judgment motions and responses should not exceed 20 pages (replies 10 pages). I count pages starting with the top of the caption and finishing with the bottom of the certificate of service. Filing the motion and a supporting brief separately does not increase the number of pages."

rules, it was not intentional. Analogously, defense counsel did not include a Timeline as the Court requests, and inadvertently failed to file her Response to Plaintiff's Motion for Summary Judgment on time. We should all constantly strive to do better to comply with the Court's various layers of rules and expectations, understanding that doing so facilitates smoother progress of cases. In the mean time we agree with defense counsel that the focus should be on the merits of the claims.

## II. FLSA AND NYLL COVERAGE.

For the first time, Defendants suggest in their Response that there may not be FLSA or NYLL coverage over this matter. This point has not been in dispute over the course of this case – nor should it have been. However, because Defendants have now raised it, we address it here.

### A. New York Labor Law Coverage

New York Labor Law ("NYLL") applies because Plaintiff was living and working in New York during his employment with Defendants. There is no dispute about the fact that during the entirety of the relevant time period at issue in this case, Defendants were based in Colorado, and Plaintiff was based in New York. Amended Complaint, Answer ¶¶ 6, 7, 16; Dkt. 34-3, Clingman Dep. 8:16:21. As succinctly summarized by a New Mexico court,

> under federal law, "[s]tates possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples." *DeCanas v. Bica*, 424 U.S. 351, 356 (1976). Accordingly, persuasive authority on the issue suggests that the MWA applies to an individual's work done in New Mexico, without reference to an employer's residence.

*Rodriguez v. Peak Pressure Control, L.L.C.*, No. 2:17-cv-00576-JCH-JFR, at *4 (D.N.M. Jun. 4, 2020), also citing *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) (denying the NYLL's protections to an induvial whose work occurred outside of the state). The NYLL has no "individual or enterprise coverage" analogs, because anyone who "labors" within

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

the state is afforded the protections of its laws. The only question, really, is whether someone is in fact an "employee."

Somewhat similar to Colorado state wage law, the New York labor law has protections regarding employees' unpaid wages in addition to protections regarding minimum wage and overtime. It is well settled that the NYLL allows for recovery of unpaid wages at "the agreed-upon rate, even if it exceeds the minimum wage." *Kernes v. Global Structures, LLC*, No. 15 Civ. 659 (CM)(DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016); see N.Y. Lab. Law ("NYLL ") §§ 191(1)(a)(i), 191(1)(d) (mandating that workers "be paid ... in accordance with the agreed terms of employment...."). <u>See also</u> *Shetty v. SG Blocks, Inc.* 20-cv-00550-ARR-SMG, at *9 (E.D.N.Y. Jun. 12, 2020) (denying defendants' motion to dismiss a NYLL wage claim regarding an individual whose compensation was to be $300,000 a year salary). Thus, for example, even if the Plaintiff were exempt from the FLSA's (or NYLL's) overtime protections, he would still be entitled to recover any unpaid wages he may have earned, along with liquidated damages, fees, and costs.

The Plaintiff seeks the greater of the applicable protections but not both. This Court has jurisdiction over this case on the basis of both federal question and diversity jurisdiction. Dkt. 14, Amended Compl. ¶¶ 3-4. There really can or should be no question but that the NYLL applies. To the extent that the FLSA's protections overlap the NYLL's, analysis into the FLSA's coverage may be redundant. Nevertheless, Plaintiff does squarely fit under its protections as well.

### B. FLSA Individual Coverage

The FLSA "brings within the general coverage of its wage and hours provisions every employee who is 'engaged in commerce or in the production of goods for commerce.'" 29 C.F.R. § 776.0a.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

Plaintiff's role and activities squarely put him under the FLSA's "individual" coverage provisions; he himself was "engaged in commerce." 29 C.F.R. § 776.10(b) says as follows:

> Employees whose work is an essential part of the stream of interstate … commerce, in whatever type of business they are employed, are likewise engaged in commerce and within the Act's coverage. …[I]f the employee, as a regular and recurrent part of his duties, uses such instrumentalities [interstate mails, telegraph, telephone or similar instrumentalities for communication] in obtaining or communicating information or in sending or receiving written reports or messages, or orders for goods or services, or plans or other documents across State lines, he comes within the scope of the Act as an employee directly engaged in the work of "communication" between the State and places outside the State.

As mentioned, Defendants were based in Colorado, and Plaintiff was based in New York. Plaintiff, Grappo, and others involved in Drive endeavors regularly communicated by texts, email, and phone on a frequent basis. (See e.g. Dkt. 34-4 to -7, 9, -12 to -14).

In addition, "employees not covered by reason of their personal engagement in interstate commerce activities… are nevertheless brought within the coverage of the Act if they are employed in an enterprise which is …as an enterprise engaged in commerce or in the production of goods for commerce." 29 C.F.R. § 784.19

### C. FLSA Enterprise Coverage

Originally, the FLSA only had "individual coverage." With amendments in 1961 and 1966, the concept of "enterprise" coverage was added, to expand its breadth. 29 CFR § 776.0.

For purposes of enterprise coverage, the FLSA defines "enterprise engaged in commerce" as an enterprise that "has employees engaged in commerce or . . . that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 …." 29 U.S.C. § 203(s)(1)(A).

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 4

The nature of Defendant Drive Coffee is not one of a localized "mom and pop" coffee shop. It is a "startup," with a "founder and CEO," who has sought outside investment in the millions of dollars, in an effort to become a major national (or beyond) coffee brand. It squarely fits the concept of an "enterprise" as contemplated by the FLSA.

### i. Annual gross volume of sales made or business done not less than $500,000

In their Answer, Defendants denied that they brought in $500,000 or more per year during relevant years. Dkt. 14, 19 ¶12. (By way of reminder, Plaintiff's asserted dates of employment were mid-September 2019 to the end of April, 2020. Dkt. 14 ¶ 24.)

Pursuant to subpoena, Defendants' accountants produced a profit and loss report regarding the first three quarters of 2020 showing income in excess of $700,000. (Ex. 11, Simple Startup "Management Report (Draft)" dated 11/11/2020). Thus, there really can be no question but that this prong was met for 2020.

The previous year, 2019, their profit and loss report shows income of just over $210,000. (Ex. 12, p. 3). However, this does not preclude enterprise coverage, for two reasons. First, the company received investment funding in excess of $500,000 for the year. Second, the regulations acknowledge that the analysis for new businesses is different from one for those that have been around a while.

On the 2019 report, the balance sheet shows capital contributions totaling almost $900,000 as of December, 2019, which amounts to a net change of an addition of more than $600,000 relative to the January, 2019 column. (Ex. 12, p. 4). Thus, even for 2019 Drive was in fact an "enterprise whose annual … ***business done*** is not less than $500,000 …." (emphasis added). There is nothing prohibiting inclusion of investment money in the definition of "business done" for enterprise coverage purposes.

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 5

This is consistent with the parties' deposition testimony. In regard to investment money coming in to Drive, the Plaintiff testified as follows:

> Q: So you mentioned that you understood that Alex had secured a large investment. What did you understand about that?
>
> A: So specifically what I remember is that it was to the amount of $5-1/2 million. And we talked about how that was going to be used to bring on this team that Alex was trying to bring on to grow the business.

Clingman Dep. 37:3-10. <u>See also</u> Dkt. 34-2, Grappo Dep. 170:1-19 (discussing $5-6MM budgets).

Traditionally, the $500,000 prong is met only by reference to sales made in a given year – normally because that is a relatively easy threshold to meet. However, the regulations acknowledge that the analysis can be different for new businesses. 29 C.F.R. § 779.269. There is a dearth of caselaw analyzing this regulation, however. E.g. *Decker v. 'Murica, LLC*, No. 19-cv-00104-MSK-SKC (D. Colo. Jan. 30, 2020) (noting the regulation but expressly declining to make any determinations as to this aspect of the claim). One case out of Georgia, where the defendant was a new "utility contractor in the primary business of repairing and replacing pipes" in a certain county, the court denied the defendant's motion for summary judgment motion regarding enterprise coverage, in part by noting the part of this regulation that allows the court to use its common sense to take a "big picture" view of the employer: "The regulations also recognize, however, that in many cases, it will be "readily apparent that the enterprise or establishment will or will not have the requisite annual dollar volume specified in the Act." *Martin v. S. Premier Contractors, Inc*. No. 2:11-CV-00197-RWS, at *12 (N.D. Ga. Mar. 6, 2013). The court noted that the regulation listed a couple of examples of enterprises that were of the character of enterprises that would meet the threshold: "For example, where the new business consists of a large department store, or a supermarket, it may be clear from the outset that the business will meet the annual dollar volume tests so as to be subject to the requirements of the Act." 29 C.F.R. § 779.269. The court noted that

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 6

these two examples were illustrative and not intended to be exhaustive, and concluded that there was no evidence in the record from which the court could decide, as a matter of law, that the defendant was not an enterprise, and therefore denied its motion for summary judgment on that issue. *Martin* at *16.

### ii. The enterprise has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce

It is not anticipated that Defendants would dispute the facts underlying this prong of the analysis. Defendant Grappo described workers packaging coffee in a warehouse in Denver for shipment in common carriers like FedEx and UPS. Grappo Dep. 51:12-52:4; 72:9-13. Drive uses Shopify as its eCommerce platform provider. Grappo 25:13-16. In their Answer to Plaintiff's First Amended Complaint, Defendants admitted the following allegation:

> 13. Defendant Drive purchases coffee beans, supplies, equipment and other necessary items to run its coffee production company and serve its customers from out of state vendors selling such supplies, and equipment originating outside the state of Colorado. Further, Defendant Drive advertises its café to the entire world on the internet at www.drivecoffee.com. Defendant Drive also accepts payments by credit cards and utilizes internet lines to accept and transmit payments.

Dkt. 14, 19 ¶ 13. Drive had a pop-up store in Macy's department store in New York City. Grappo Dep. 26:20-23. Drive's workforce has indeed been engaged in "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."

For all these reasons, enterprise coverage is also met.

### D. Defendants Violated the FLSA's Minimum Wage and Overtime Provisions

In terms of the substance of his claims, the Plaintiff has alleged both minimum wage and overtime FLSA infractions. Defendants hollowly attempt to assert that the amount they paid him (which they themselves do not define as being "wages"), divided by the quantity of workweeks

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 7

Plaintiff alleges he worked for Defendants, exceeds the federal minimum wage rate. However, the law is clear that this is not how the FLSA works. The workweek stands alone. 29 C.F.R. § 778.104.

Similarly, Defendants have violated overtime rules as well. The FLSA is clear that all employees who are covered by the Act and do not fall into one of the exemptions must be paid according to the minimum wage and overtime laws. Here, *ab initio* the Defendants cannot maintain that the Plaintiff was subject to any exemptions because, at a minimum, any of the exemptions to which they might have tried to meet had the employment relationship been effectuated more normally cannot be met because the Defendants did not pay the Plaintiff a "salary" and therefore cannot meet the "salary basis test." 29 C.F.R. § 541.602. The Defendants did not keep track of his time, and he has alleged that at least some workweeks he worked more than 40 hours a week with no pay, much less overtime pay.

For all these reasons, the claim is subject to the FLSA's protections.

### III. Plaintiff's Start Date Was September 13, 2019.

Plaintiff understood his start date to have been September 13, 2019. Clingman Dep. 47:25-48:17. He has been clear about this. Defendants deny that he was their employee at all, but do not dispute this date such as by proposing that his start date was something else.

Defendants miscite the record evidence by stating that the "Plaintiff's description of the trip as a 'kick off' appears to be Plaintiff's own terminology…" [Dkt. 38, p. 4]. Plaintiff submitted evidence at Plaintiff's SOF ¶ 24 of Defendant Grappo, not Plaintiff, texting on 9/7/2020 as follows: "[Grappo] We are confirmed the 17th [9/17/2019]. My plan is to fly you to Colorado this Friday, I'm renting some space at a ranch for the whole team, we'll all be out over the weekend and **kick things off** and get to know each other as a team and conclude with our meetings during the week" (emphasis added).

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 8

Plaintiff also cited to record evidence regarding examples of his work and his role in Drive. SOF ¶ 24-26. This is more than sufficient to meet the "suffer or permit" standard for work performed. 29 C.F.R. § 785.11.

### IV. PLAINTIFF'S RATE OF PAY WAS $150,000 PER YEAR.

Defendants contend that Plaintiff has not presented undisputed evidence of the amount owed by the Defendants. This simply is not true.

The parties agree that Plaintiff submitted a range of acceptable salary rates of $150,000 to $190,000. Clingman Dep. 43:2-4; 43:21-24; 46:13-21; Grappo Dep. 171:12-14. Defendants accepted that range, and Plaintiff began work (i.e. engaged in performance). Defendants could have decided to pay him more than that, but $150,000 was the agreed-upon floor.

Defendants implicitly attempt to recast the arrangement to suggest that the Plaintiff only need have been paid at most at a rate of $7.25 per hour, the federal minimum wage. Given the Plaintiff's experience and the nature of the role, it is disingenuous to suggest that he ever would have accepted the role at that rate.

When the relationship fell apart and the Plaintiff confronted Defendant Grappo by email, Plaintiff stated directly his demand for payment of his $150,000 a year salary. Dkt 34-10, Emails, p. 3 (4/14/2020); p. 8 (5/13/2020). At no time during the string of a series of back-and-forth emails (interspersed with calls) did Defendant Grappo dispute that amount or indicate in any way that Plaintiff had not actually been working for Drive. His response was simply that the money wasn't there. See generally, Dkt. 34-10.

Plaintiff set forth his computation of damages in the Scheduling Order in this case. Dkt. 22, p. 3. Combining that with the undisputed facts, he has set forth with precision the amounts he is claiming: For the seven months he worked, he should have been paid $150,000 times 7/12 of a

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

year, which is $87,500. The parties agree that Drive issued him payments in the amounts of $13,300, $6650, and $3500, which equals $24,450. The difference between those is $64,050. In addition, Defendants failed to reimburse Plaintiff's expenses in the amount of $6,205. *Id*. Together this comes to $70,255. In addition, Plaintiff claimed overtime in the amount of $16,767.90. *Id*. Exclusive of attorney fees and costs, the total is therefore $87,022.90.

## V.  CONCLUSION

Plaintiff was the Defendants' employee, and they should have paid him properly for his work. By focusing on the fact that are both undisputed and material, the Court is in a position to make a legal determination as to the key issues in this case, and grant Plaintiff's motion for summary judgment.

Respectfully submitted, this **8th** day of **September, 2021.**

ANDERSONDODSON, P.C.

*/s/ Penn Dodson*
**Penn A. Dodson, Esq.**
CO Bar No. 54677
*penn@andersondodson.com*
Attorney for Plaintiff

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Clingman v. Drive Coffee*
Case No. 1:20-cv-01485-RBJ

P's Resp to Ds' MSJ
Page 10