IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01485-RBJ

KEITH CLINGMAN,

    Plaintiff,

v.

DRIVE COFFEE, LLC,
DRIVE COFFEE, INC., and
ALEX GRAPPO,

    Defendants.

---

ORDER ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT

---

Before the Court are the parties' cross motions for summary judgment[1] (ECF Nos. 33 and 34). Plaintiff's motion is GRANTED in part and DENIED in part. Defendants' motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

Plaintiff Keith Clingman was first introduced to Defendant Alex Grappo by a mutual friend, Becky Moody, in the summer of 2019. ECF No. 33-3 at 33. Ms. Moody introduced the two because she believed plaintiff could be helpful to Defendant Drive Coffee (Drive), which

---

[1] The Court takes notice of the fact that plaintiff has circumvented my clearly outlined page limits by attaching an additional statement of facts as an exhibit to his motion for summary judgment rather than including it in the body of the motion. Plaintiff's statement of fact "exhibit" is, on its own, fifteen pages—three quarters of the 20-page limit for summary judgment motions. As a result of this maneuvering, plaintiff may have had more space for argument in his motion for summary judgment than defendants had in theirs. This is inappropriate. While I am not going to take defendants' suggestion that I refuse to consider plaintiff's motion for summary judgment entirely, I am striking plaintiff's additional statement of facts contained in ECF No. 34-1, and I did not consider it in drafting this order.

1

Mr. Grappo founded, and which was in the early stages of development. ECF No. 33. Mr. Grappo and Mr. Clingman exchanged emails and eventually met for coffee. *Id.* They became friends and texted frequently, primarily about Drive, but also about non-business topics. *See* ECF No. 34-9. Mr. Grappo requested plaintiff's resume, and plaintiff sent it. ECF No. 34-5. After these initial exchanges, the parties' facts diverge significantly.

Plaintiff says that Mr. Grappo offered him a job, and that he accepted. ECF No. 34. He says they discussed and agreed upon a range for plaintiff's salary ($150,000–$190,000) and for the equity interest that plaintiff would receive. ECF No. 34-3 at 45–47. Plaintiff's understanding was that he was going to be starting as a full-time, executive level employee sometime in September of 2019. ECF No. 34-3 at 47–48. Defendants agree that these conversations happened, but they contend that they happened with the understanding that Drive was currently without the funding needed to hire plaintiff, and that plaintiff could not and would not be an employee without that funding. ECF No. 33.

On September 13, 2019 Drive paid for plaintiff and several other people to fly out to Denver and spend a week in both Denver and Aspen getting to know Drive as a company. ECF No. 33. Plaintiff understood the 13th to be his start date and believed that he and the others who were flown out were Drive executives. ECF No. 34. He thought the trip was for Drive's executive team to get to know each other and to sign the employment paperwork. *Id.* Mr. Grappo did not believe any of the individuals he flew out to Denver to be employees—rather, he believed they were his future executive team if he could pull the funding together to hire them. ECF No. 33. Mr. Grappo did not produce employment papers on the Denver trip. ECF No. 34. Plaintiff says Mr. Grappo told him and his colleagues that the paperwork was coming. *Id.* Mr. Grappo says he said no such thing. ECF No. 33-1 at ¶9.

After the Denver trip, plaintiff accompanied Mr. Grappo on several trips related to Drive. ECF No. 34. Plaintiff thought he was attending these trips as Drive's Chief Sales and Marketing Officer. *Id.* Mr. Grappo believed that plaintiff was attending as a friend interested in Drive's business. ECF No. 33-1 at ¶14. Plaintiff also asserts that, after the Denver trip, he worked full-time hours for Drive and did the work that a marketing executive would ordinarily do. ECF No. 33-3 at 20. Plaintiff did this work from a @drivecoffee.com email address. ECF No. 34 at 14. Defendants contend that plaintiff did very little work, and any work he did was menial. ECF No. 33-4 at 14. The parties agree that plaintiff helped coordinate a Drive event with Macy's but differ on the extent and importance of plaintiff's work on the project. ECF No. 33-3 at 117; ECF No. 34-2 at 193.

Plaintiff received payments on three different occasions while he was associated with Drive. On November 17, 2019 Drive paid him $13,300; on January 13, 2020 he was paid $6,650; and on April 10, 2020 he was paid $5,000 in separate payments of $3,500 and $1,500. ECF No. 33-6. Plaintiff argues that these payments were portions of the salary that he was owed, and that Drive only paid them because plaintiff kept insisting that he needed to be paid his salary. ECF No. 34. Defendants say that the payments were made because plaintiff needed the money. ECF No. 34-2 at 15, 54–55, depo pages 56, 213-14.

In early April, plaintiff began discussions with Mr. Grappo via email and phone regarding salary payments. *See* ECF No. 34-10. These culminated with what plaintiff believes was his termination from Drive on April 23, 2020. *Id.* at 5. On that day, Mr. Grappo told plaintiff "[A]ny further communication should now occur through your personal Gmail." *Id.* Plaintiff filed the instant suit on May 25, 2020.

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is material if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment; nor may the nonmovant rely on 'mere reargument of his case or a denial of an opponent's allegation.'" *Stuart v. Erickson Living Mgmt.*, No. 18-CV-01083-PAB-NYW, 2019 WL 7289016 at *2 (D. Colo. July 29, 2019).

Judgment as a matter of law is appropriate when the evidence is not susceptible to any reasonable inferences that support the non-moving party's position. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 (10th Cir. 2016) (quoting *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013)). A party is entitled to judgment as a matter of law "only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law. *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011) (quoting *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)).

In applying this standard where, as here, there are cross motions for summary judgment, "the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered

in the light most favorable to the non-prevailing party." *Chateau Vill. N. Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, 170 F. Supp. 3d 1349, 1355 (D. Colo. 2016). When parties have filed cross motions for summary judgment, the Court can assume that no evidence need be considered other than that filed by the parties, but "summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

### III.    MOTIONS FOR SUMMARY JUDGMENT

#### A. Plaintiff's Status as an Administrative Employee Under the FLSA and NYLL

While most of the parties' papers are focused on the issue of whether Mr. Clingman was an employee of Drive, all of plaintiff's claims under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) could potentially be resolved for a different reason. Plaintiff could not proceed on the claims under these acts if, assuming he was an employee of Drive, the exemption for administrative employees under the FLSA and the NYLL applied to him. However, I find that the administrative exemption under the FLSA and NYLL does not apply to plaintiff's alleged employment.

Exemptions to the FLSA should be construed narrowly. *See CIR v. Clark*, 489 U.S. 726, 739 (1989). To qualify as an administrative employee for purposes of exemption from the FLSA, an employee must (1) be employed on a salary basis of at least \$684/week[2]; (2) have the

---

[2] Prior to January 1, 2020, the salary basis minimum rate was \$455. *See* 29 C.F.R. § 541.600 and 84 FR 51306 (Sept. 27, 2019). That means different minimum salary basis rates would apply at different points in this case. But plaintiff is not contending that he should have been paid at any minimum wage rate. He is contending that he was hired for a salary of \$150,000 or more per year, though he also contends that because of the manner in which he was paid (or not paid), the reality was that he was not paid on a "salary basis."

5

primary duty of performing "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) have that primary duty "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. The NYLL applies the same exemptions as the FSLA. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2. As a result, I will analyze only the FLSA and apply that analysis to the FLSA and NYLL claims.

Presuming for the sake of this section that Mr. Clingman was an employee of Drive, there is no genuine dispute of material fact on whether the exemption for administrative employees applies to plaintiff. It does not. The parties do not dispute that Mr. Clingman's primary duties were related to general business operation or management. *See* ECF No. 35; ECF No. 39. Nor do they dispute that his primary duties would include the exercise of discretion and independent judgment. *See id.* And had Drive actually paid plaintiff the regular portions of the $150,000 or more salary that plaintiff alleges Mr. Grappo promised him, plaintiff would have been an administrative employee within the FLSA exemption.

But Mr. Clingman was not paid on a "salary basis." An employee will be considered on a "salary basis" for FLSA purposes "if the employee regularly receives each pay period on a weekly, or less frequent basis, a *predetermined* amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602 (emphasis supplied). "The salary basis test requires that an employee know the amount of his compensation for each weekly (or less frequent) pay period during which he works, before he works." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341, 343 (5th Cir. 2020) (vacated on other grounds).

Plaintiff argues that because he was only paid "four sporadic payments," ECF No. 35 at 4, his employment does not fit the definition of "regularly receiving" pay on a "weekly or less frequent basis." 29 C.F.R. § 541.602. Defendant argues that the "less frequent basis" language should not be read to require pay be dispensed at specific times, and that even sporadically dispensed salaries are still salaries.

However, I need not determine the required frequency of payments to resolve this issue. There is no genuine dispute of material fact about whether the payments made to plaintiff were "predetermined." Neither party has introduced evidence indicating that the money received by plaintiff was "a predetermined amount" as required by the regulation. 29 C.F.R. § 541.602. Plaintiff testified that when he joined Drive, he did not know what his salary was, just the range that he and Mr. Grappo had agreed that the salary would be within. ECF No. 33-3 at 55.

Plaintiff alleges that he began working at Drive in September of 2019. For the first three months of his alleged employment he was paid $13,300; for the next month-and-a-half he was paid $6,650; and for the next three months he was paid $5,000. These are not predetermined amounts.[3] Though the first two payments appear to be related (the second payment was for half of the first payment), there is evidence in the text messages between Mr. Grappo and Plaintiff that the $6,650 payment was intended to compensate plaintiff for his work in the first half of January 2020. ECF No. 34-9 at 24. There is no evidence as to what the $13,300 payment was for (parts of September, October, November, or December?), other than Mr. Grappo's testimony that it (and the $6,650 payment) were actually just gifts. This does not establish any relationship, predetermined or otherwise, between the first and second payments. Further, the payment for the third period is neither a half month's payment nor one-third of a month's payment on the

---

[3] In his declaration Mr. Grappo mistakenly refers to the second payment as $6,500. ECF No. 33-1 at 6, ¶22.

$13,300/$6,650 scale. The timing and amounts of these payments appear to be arbitrary and untethered to a predetermined salary.[4]

Mr. Grappo wrote in his declaration that the first and second payments were made to help plaintiff with financial difficulties—he did not indicate that the first and second payment had any relationship to each other. ECF No. 33-1 at ¶¶20- 22. He testified at his deposition that the first two payments were paid "purely because he [plaintiff] was in a situation where he was not employed, he needed the money to get by, he made it very clear he was struggling financially." ECF No. 34-2 at 54–55, depo pages 209–210. This testimony shows that the amounts paid to plaintiff were not predetermined payments and thus not payments on a salary basis.

Defendants have not presented any evidence to show that the payments made to Mr. Clingman were predetermined. A reasonable factfinder could not find, on the evidence before the Court, that the payments made to plaintiff were for "predetermined amount[s]." As the payments made to Mr. Clingman were not "predetermined," the administrative exemption under the FLSA does not apply. If Mr. Clingman meets the other requirements to recover under those acts, he can proceed on his FLSA and NYLL claims.

## B. Plaintiff's Status as an Employee

The primary focus of the cross motions for summary judgment is whether there is a genuine dispute of material fact regarding plaintiff's status as an employee at Drive Coffee. To proceed on his claims under the FLSA and NYLL, plaintiff must prove he was an employee at Drive. There are factual disputes on this issue.

---

[4] I note that if $6,650 were viewed as a half month's salary, as Mr. Grappo seemed to characterize it in a text message, and $13,300 were thus viewed as a full month's salary, then the annualized salary would be $159,600. However, no one mentions that figure. The plaintiff suggests that the discussions were about a salary in the $150,000 to $190,000 range, but he has for the most part argued in his brief that the number is $150,000. If so, then the actual payments don't even fit his contention.

8

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The verb "employ" is defined in the FLSA to mean "suffer or permit to work." 29 U.S.C. § 203(g). This is a broad definition that "is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Henderson v. Inter-Chem Coal Co., Inc*., 41 F.3d 567, 570 (10th Cir.1994). Instead, the "economic reality test" governs the determination of whether a plaintiff is an employee for FLSA purposes. *Id.* Under that test, the focus is on whether the individual is economically dependent on the business in question or is, in effect, in business for himself. *Id.* "The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

To apply the economic realities test, courts consider the following factors[5]: "(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business." *Id.*; *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989). No one factor is dispositive, and I consider the factors in the totality of the circumstances. *Id.*

---

[5] Defendants argue that different factors apply under the economic realities test. ECF No. 33 at 7 (citing *Lopez v. Edwards*, 2018 WL 2241062, *3 (D. Colo. 2018)). However, the factors in defendants' cited case are applicable when a court is determining whether an individual or entity is an employer, not whether an individual is an employee. *See Schindler v. Whiting Petroleum Corp.*, 2017 WL 5969814 at *3 (D. Colo. 2017) (unreported). Here, defendants do not meaningfully argue that Drive was not an employer. Rather they employ this factor test to try to show that Mr. Clingman was not an employee.

1. <u>Factor One: Control Exerted by the Alleged Employer</u>

This inquiry primarily focuses on whether a potential employee had the independence in setting hours and determining other logistics of working that is more consistent with a status as an independent contractor than an employee. *See Baker*, 137 F.3d at 1440. However, here, neither party contends that Mr. Clingman was ever an independent contractor. The disagreement is over whether he was working for the defendants at all. This factor weighs in favor of finding that plaintiff was an employee.

2. <u>Factor 2: Worker's Opportunity for Profit and Loss</u>

A plaintiff who has the ability to independently experience a profit or loss, such as a handyman who chooses which jobs to accept and how much to charge, is more likely to be an independent businessperson than an employee. *See Baker*, 137 F.3d at 1441.

It does not appear that plaintiff had the opportunity for profit or loss in his work for Drive. Plaintiff contends that he had no opportunity to determine profit and loss for Drive, and that he had a standard management-level compensation package. ECF No. 34 at 11. Defendants do not specifically address this factor in their motion for summary judgment and do not respond to plaintiff's argument on this factor in his motion for summary judgment. *See* ECF Nos. 33, 38, 39. This factor weighs toward a finding that plaintiff was an employee.

3. <u>Factor 3: Worker's Investment in the Business</u>

A plaintiff who invests in a business and whose pay is based on returns to those investments is less likely to be an employee. *See Baker*, 137 F.3d at 1442.

Plaintiff did not invest money in the business. Plaintiff contends that, other than his "time, energy, and reimbursable business expenses," he made no other contribution to Drive. ECF No. 34 at 11. Defendants do not contend otherwise. *See* ECF Nos. 33, 38, 39. There were discussions of compensating Mr. Clingman with equity in Drive, but he received only cash

10

payments.  ECF No. 33-3 at 13; ECF No. 33-1 at ¶¶20, 22.  This factor weighs toward a finding that plaintiff was an employee.

    4.        <u>Factor 4: The Permanence of the Working Relationship</u>

There is a genuine dispute of material fact on the permanence of plaintiff's working relationship with Drive.  Plaintiff contends that his working relationship with Drive began with the Denver trip in September 2019 and that it was to continue indefinitely.  ECF No. 34 at 12.  Defendants argue that plaintiff never had a working relationship with Drive, and that any work he did on behalf of Drive was gratuitous and with the understanding that Drive could not yet afford to hire him as an employee.  ECF No. 33 at 8–9.  Neither party argues that plaintiff was an independent contractor.  If there was any employment relationship, it would have been an indefinite one.

This factor, because of the specific circumstances of this case, is difficult to analyze without getting to the root question of whether plaintiff was an employee at all.  Plaintiff performed work and was paid, which generally points to at least some sort of employment relationship, if he was not an independent contractor.  But how much he worked and the value of that work are hotly contested.  Mr. Clingman testified that he worked normal the hours and performed the normal tasks of an executive, but Mr. Grappo testified that plaintiff performed very little work of minimal importance to the company.  ECF No. 33-3 at 20; ECF No. 33-4 at 14.  Choosing which testimony to credit is necessary to determine which way this factor weighs—if plaintiff was only working a few hours a week, that would not seem like a normal employment relationship or one that is likely be permanent.

The issue of the payments is also disputed.  The parties agree that the payments were made but disagree as to why they were made.  Plaintiff contends that they were salary payments pursuant to his employment at Drive.  ECF No. 34-10.  Defendants contend that they were

gratuitous payments to thank plaintiff for his enthusiasm about Drive and to help him stay financially afloat while Drive awaited the funding needed to hire plaintiff. ECF No. 33-1 at ¶¶20, 22. There is sufficient evidence on each side that a factfinder could find that an employment relationship existed or did not exist.

5.  Factor 5: The Degree of Skill Required to Perform the Work

There is a genuine dispute of material fact on the skill required to perform the work that plaintiff performed because the parties dispute what work plaintiff did. As outlined in the section above, plaintiff claims he did executive level tasks, and defendants claim he did menial tasks. ECF No. 33-3 at 20; ECF No. 33-4 at 14. If plaintiff's statements are true, this factor would weigh toward a finding that plaintiff was an employee of Drive. If Mr. Grappo's statements are true, this factor would weigh against a finding that plaintiff was an employee.

6.  Factor 6: The Extent to which the Work Is an Integral Part of the Alleged Employer's Business

For the same reasons outlined in the analysis of the fifth factor, there is a genuine dispute of material fact on this factor as well. If plaintiff's work was that of a marketing executive, as plaintiff testified, it was likely integral to Drive's business. If plaintiff's work was largely menial busy work, as Mr. Grappo testified, it was not integral to Drive's business.

7.  Conclusion

On balance, there are still genuine disputes of material fact that must be resolved as to whether plaintiff was an employee of Drive for FLSA purposes. Summary judgment is inappropriate for either party on this issue. Defendants essentially admit this, writing in their response to plaintiff's motion that "there is a genuine and material dispute as to whether plaintiff

12

was an employee." ECF No. 38 at 1. Because summary judgment is not warranted on this issue, plaintiff's FLSA and NYLL claims can proceed.[6]

### C. **Plaintiff's Claims for Overtime**

Even though Mr. Clingman does not fall within the administrative exemption and genuine disputes of material fact remain on the question of whether he is an employee, he fails to raise a genuine dispute of material fact on his claims under the FLSA and NYLL for his claims for overtime pay under those acts. Where cross motions for summary judgment have been filed, the Court can assume that no evidence need be considered other than that filed by the parties, but "summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atl. Richfield Co.*, 226 F.3d at 1148. The NYLL requires that employers pay "an employee for overtime at a wage rate of one and one-half times the employee's regular rate." The FLSA also requires overtime pay for hours worked by an employee in excess of forty hours. 29 U.S.C. § 207(a)(1) (2003).

Plaintiff has failed to raise a genuine dispute of material fact on these claims. Even if he was an employee of Drive, he has produced no evidence that he ever worked more than forty hours in one week. He has not attached documentation to support a contention that he worked more than forty hours at any point during his association with Drive. Nor did he testify that he

---

[6] Plaintiff also alleges a negligence *per se* claim, which cannot proceed. Plaintiff alleges that defendants were negligently in violation of the "hot goods" provision under the FLSA which forbids the transport of goods when an employee employed in violation of sections 206 or 207 was employed in the production of those goods. 29 U.S.C. § 215(a)(1). However, as *Chen v. Street Beat, Inc.*, the case cited by plaintiff in support of this claim, makes clear, the FLSA preempts state common law claims based on the same facts and circumstances as the FLSA claims. *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005); *see also Johnston v. Davis Sec., Inc.*, 217 F.Supp.2d 1224, 1227–28 (D. Utah 2002)(finding that plaintiff's gross negligence and negligent misrepresentation, were preempted under the FLSA because they were based on the same facts and circumstances as her FLSA claims, namely, overtime violations). Here, plaintiff's negligence *per se* claim is based entirely on Drive's alleged violations of the FLSA as to him. Put another way, his negligence *per se* claim rests on exactly the same facts and circumstances as his FLSA claim. As a result, his negligence *per se* claim is preempted and is dismissed accordingly.

13

ever worked more than forty hours in one week; at his deposition, he testified only that he worked as he would expect a "full-time marketing executive" to work. ECF No. 33-3 at 20. A party is entitled to judgment as a matter of law "only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law. *ClearOne Commc'ns, Inc.* 643 F.3d at 771. Even considering the evidence in the light most favorable to Mr. Clingman, there is no evidence to support a claim for overtime wages because there is no evidence that plaintiff ever worked a single hour of overtime. Summary judgment is warranted.

### D.  Plaintiff's Minimum Wage Claims

Once again, even though plaintiff does not fall within the administrative exemption and a genuine dispute of material fact remains on his status as an employee, summary judgment is appropriate on plaintiff's minimum wage claims under the FLSA and NYLL. Plaintiff makes this claim under section 206 of the FLSA which sets out the minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce. *See* 29 U.S.C. §206. The NYLL has a similar provision, which is interpreted to mirror the FLSA, although the wage amounts required and the various effective dates for those wage requirements differ. *See* N.Y. Lab. Law § 652. Because the parties have filed cross motions for summary judgment, I can assume that I need not consider any additional evidence. *Atl. Richfield Co.*, 226 F.3d at 1148.

Plaintiff's claims for minimum wage under the FLSA and NYLL fail for the same reason that his claims for overtime under those statutes fail. Mr. Clingman testified at his deposition that he worked as a "full-time marketing executive" would work. ECF No. 33-3 at 20. Full-time is defined under the FLSA and NYLL as working forty hours per week. 29 U.S.C. §207; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Under the FLSA, workers must be paid a minimum

of $7.25/hour.  Under the NYLL, the minimum wage Drive would have had to pay Mr. Clingman a minimum wage of $15.00/hour.

Even reading all the facts in the light most favorable to plaintiff, he has not raised a genuine dispute of material fact on his minimum wage claims.  Because he stated in his deposition that he worked "full-time," I will assume that he worked forty hours per week.  Plaintiff testified that he started work on September 13, 2019 and was terminated April 23, 2020.  ECF No. 34-3 at 48; ECF No. 34-10 at 5; ECF No. 34-3 at 120–21.  Assuming he worked those seven months, at forty hours a week, and without attempting to remove holidays or days that plaintiff may have taken off work, plaintiff worked approximately 1,120 hours.  The parties do not dispute that he received payments totaling $24,950.  Based on these figures, plaintiff was paid roughly $22.28/hour.  This hourly rate exceeds the minimum wage required under either the FLSA or NYLL.  Plaintiff has not raised a genuine dispute of material fact on his minimum wage claims.

### E.  Plaintiff's Claim for Breach of Contract

Summary judgment is not warranted on plaintiff's breach of contract claim.  Whether a contract exists when "the evidence is conflicting or admits of more than one inference" is a question for the jury.  *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986).  Here, the evidence is clear that plaintiff never signed an employment agreement, even though he would have liked to.  *See* ECF No. 33-3 at 18.  However, there is a genuine dispute over whether an oral contract existed between the parties.

Defendants claim that there could not have been an oral contract because important terms had not yet been decided, such as salary, start date, and grant of equity.  ECF No. 33.  A contract only exists when the parties have a meeting of the minds as to all essential terms of the contract.

15

*See Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1260 (Colo. App. 2010). The parties need not discuss every material term for there to be a meeting of the minds if a party can show that both parties knew and agreed to the term. *Harper v. Mancos School Dist. RE-6*, 837 F. Supp. 2d 1211, 1218 (D. Colo. 2011).

Mr. Clingman testified that he and Mr. Grappo came to an oral agreement that any salary within the range of $150,000 to $190,000 would be acceptable. Mr. Grappo admits that they discussed that range but argues that any discussion with plaintiff about salary contemplated future employment when Drive had sufficient capital to pay plaintiff. ECF No. 34-2 at 174. This salary range is sufficiently defined that, if there was a meeting of the minds, it would support a finding of a valid contract. The genuine dispute of material fact is whether there was an agreement on a range for plaintiff's immediate salary.

The same is true on the terms of start date and equity. For the start date, plaintiff testified that the start date was originally going to be September 1, 2019, but only if some investor funding came in. ECF No. 34-3 at 47. He said that if the funding didn't come in, the understanding was that he would start sometime in September, and that his actual start date ended up being September 13, 2019, when he flew to Denver for the retreat. *Id.* at 47–48. Mr. Grappo testified that plaintiff did not have a start date because he was never hired; all their discussions about plaintiff's employment at Drive were discussions for the future. *See, e.g.,* ECF No. 33-1. On the issue of equity, Mr. Clingman testified that he and Mr. Grappo came to an agreement that the compensation package would include equity in the range from four to eight percent. ECF No. 33-3 at 56. Mr. Grappo did not specifically address plaintiff's claims about equity, but his same assertion that only a future agreement was ever contemplated applies. These are genuine disputes of material fact: plaintiff asserts that an agreement was reached on these

essential contract terms, defendants assert no agreement was reached and that only a future agreement was contemplated. Summary judgment is inappropriate on plaintiff's claim for breach of contract.

### F. Plaintiff's Claim for Unjust Enrichment

This claim is an alternative to the contract claim, as there cannot be both a contract remedy and a contract implied in law remedy. Plaintiff might dilute his claims by pursuing his FLSA/NYLL claim, his contract claim, and his unjust enrichment claim. However, that is a tactical issue, not a question of whether there is a genuine dispute of material fact as to these claims.

There is a genuine dispute of material fact on whether plaintiff can make out an unjust enrichment claim. Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party. Scott v. Scott, 428 P.3d 626, 636 (Colo. App. 2018). To make out a claim for unjust enrichment, a party "must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Id.* A party cannot recover for unjust enrichment where there is an express contract addressing the subject of the alleged obligation to pay. *Id.* at n.6.

Here, whether the defendants received a benefit at plaintiff's expense depends on how much plaintiff worked and what the value of that work was. As outlined above, those fact issues are genuinely disputed. Similarly, whether the circumstances would make it unjust for defendants to retain the benefit is the subject of a genuine dispute. If defendants allowed plaintiff to believe they had hired him without actually hiring him so they could get his work for a highly discounted rate, that would be a circumstance that might warrant a recovery under the

doctrine of unjust enrichment. Mr. Grappo claims he communicated very clearly to plaintiff that he could not yet hire him and that the work plaintiff did was not valuable and not important. *See* ECF No. 33-1. Plaintiff says Mr. Grappo did not make such communications to him, and that he did work of importance to the company. *See* ECF No. 33-3 at 20, 55–57. These are genuine disputes of material fact.

## ORDER

1. The Court strikes plaintiff's "Statement of Facts," ECF No. 34-1.

2. Defendants' motion for summary judgment, ECF No. 33 is GRANTED on plaintiff's claim for negligence *per se* and plaintiff's claims for overtime and minimum wage under the FLSA and NYLL. The motion is DENIED on all other issues.

3. Plaintiff's motion for summary judgment, ECF No. 34, is GRANTED on the issue of whether the administrative exemption under the FLSA and NYLL applies to plaintiff. The motion is DENIED on all other issues.

DATED this 27th day of October, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge