IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-01485-RBJ

KEITH CLINGMAN,

    Plaintiff,

v.

DRIVE COFFEE, LLC; DRIVE COFFEE, INC and
ALEX GRAPPO, an individual,

    Defendants.

---

## PLAINTIFF'S MOTION FOR RECONSIDERATION

For the reasons set forth below, Plaintiff respectfully requests reconsideration of one limited aspect of the Court's ruling on parties' cross motions for summary judgment, namely the dismissal of the minimum wage claims. [Dkt. 47].

### I. CONFERRAL

Counsel for the Plaintiff conferred with counsel for Defendants. Defendants intend to oppose this motion. The parties jointly propose that Defendants' response be due on or before November 10, 2021. (Trial is currently set to start November 15, 2021). In the interest of time, Plaintiff will agree not to insist on filing a reply.

### II. STANDARD OF REVIEW

Reconsideration may be granted upon "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995).

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY  10004
212.961.7639
www.andersondodson.com

Where a party files a motion for reconsideration prior to the entry of judgment or of a final order, Rules 59(e) [motion to amend or alter a judgment] and 60(b) [relief from a judgment or order] do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962).

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. <u>See</u> *Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. <u>See</u> *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. <u>See, e.g.</u>, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order).

Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. Here, Plaintiff requests that the Court reconsider a limited aspect of its ruling on the parties' cross motions for summary judgment based on the need to correct clear error and/ or to prevent manifest injustice.

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 2

## III. ARGUMENT

### A. **It is clear error to accumulate payments an employer pays to an employee for the purpose of satisfying the minimum wage requirements.**

The Court dismissed the Plaintiff's minimum wage claims on this basis:

> Because he stated in his deposition that he worked "full-time," I will assume that he worked forty hours per week. Plaintiff testified that he started work on September 13, 2019 and was terminated April 23, 2020. ECF No. 34-3 at 48; ECF No. 34-10 at 5; ECF No. 34-3 at 120–21. Assuming he worked those seven months, at forty hours a week, and without attempting to remove holidays or days that plaintiff may have taken off work, plaintiff worked approximately 1,120 hours. The parties do not dispute that he received payments totaling $24,950. Based on these figures, plaintiff was paid roughly $22.28/hour. This hourly rate exceeds the minimum wage required under either the FLSA or NYLL.

Dkt. 47 p. 15. Under the FLSA and NYLL, it is improper to accumulate the payments in this manner. They cannot be aggregated and then reverse-engineered into satisfying the minimum wage laws' requirements. "Prompt payment" is required by the wage payment laws, even when not expressly spelled out by statute – but in this case the timing actually is spelled out in statute.

#### 1. The New York Labor Law specifies frequency of payments required

Under the express statutory provisions of the New York Labor Law require the Plaintiff in this case to have been paid on an at least semi-monthly basis (or more frequently). NYLL § 191(1)(d),(2).

NYLL § 191 governs frequency of wage payments. NYLL § 191(1) has different provisions for four categories of workers: "manual workers," "railroad workers," "commission salespersons," and a catch-[almost]all, "clerical and other workers." In its definitions section, NYLL § 190(d)(7) states that the term "'Clerical and other worker' includes all employees not included in subdivisions four, five and six of this section [i.e. railroad workers, commissioned salesmen, and factory workers], except any person

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 3

employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week." (As a bit of a side note, § 191's $900 per week threshold is not the NYLL's equivalent of the FLSA's $684 per week salary basis test. During time periods relevant here, that level was $1,125.00 per week for administrative exemption. NYCRR § 142-2.14(c)(4)(ii)(d)(1)).

Returning to § 191, NYLL § 191(1)(d) says that, "A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." This has three separate requirements: (1) semi-monthly or more frequently, (2) on regular pay days, (3) designated in advance. Payments made on a willy-nilly basis simply do not suffice. The Labor Law further underscores the importance of frequency of payments by stating that "No employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." NYLL § 191(2). Employees must be paid at consistent intervals. It is not legally permissible for employers to require them to wait to get paid.

In this case, the Plaintiff falls under the "clerical and other worker" definition for two reasons. First, from a timing perspective, Defendants did not pay him at or above $900 a week, except for the three weeks in which he did actually receive payments. Almost all of the weekly, biweekly, or semi-monthly periods he worked for Defendants, Plaintiff received nothing at all.

Second, even in the aggregate Defendants did not pay him at or above this rate of pay. ($900 per week times 52 weeks a year, divided by twelve months, times the seven

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 4

months he alleges he worked for Defendants, yields $27,300. The $24,950 he received is less than this amount.) Thus, as a matter of math he is not exempted from the frequency provision.

Therefore, Plaintiff in this case to have been paid on an at least semi-monthly basis pursuant to the NYLL. For any time periods in which he was not paid at all, he was not paid at or above the minimum wage.

### 2. Even if the specifics of NYLL § 191 did not govern the Plaintiff's frequency of payments, there is a general presumed requirement of prompt payment

Timing of payments matters. "While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities, and is codified in interpretative regulation, 29 C.F.R. § 777.2 (a), construing 29 U.S.C. § 206, 207, to require payment in cash or negotiable instruments payable at par, except as otherwise stated in § 3(m), 29 U.S.C. § 203(m)." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2nd Cir. 1960). In that case, the plaintiffs had only "a vague understanding that at some indefinite future date, related to the termination of the arrangement proceedings, they would be taken care of. In fact the understanding as to when payment would be made does not seem to have been clearly articulated. At the time the present prosecution was commenced they had been unpaid for approximately a year. Final payment was not made until seventeen months after the rendering of the services in question." Ultimately the Second Circuit concluded that, "Such delayed payment does not meet the requirements of § 207(a)."

Similarly the Ninth Circuit has stated that "the FLSA wages are 'unpaid' unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993). In that case the state of California was found to have violated the minimum wage

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 5

provisions of the FLSA by paying wages 14-15 days late because there was no state budget, and thus no funds appropriated for the payment of salaries, on payday. *Id*. The court explained, "The obligation kicks in once an employee has done covered work in any workweek. To us, 'shall pay' plainly connotes shall make a payment . If a payday has passed without payment , the employer cannot have met his obligation to 'pay.'" *Id.* at 1539. See also *Martin v. United States*, 117 Fed. Cl. 611, 613 (2014) (similar result for federal employees).

From a calculations perspective minimum wage and overtime get *computed* on a weekly basis, which is defined, very specifically, as "a fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods.' 29 C.F.R. § 778.105. From a *timing* perspective, wages must be paid "promptly." What that means varies from job to job and context to context, which is why, for example, the NYLL has different frequency requirements for manual workers (weekly) as opposed to clerical or other workers (semi-monthly). The law allows, in positions ranging from right at minimum wage to "highly compensated" employees, for there to be some amount of payment that can be paid in spurts, (such as commissions that are earned on a quarterly basis) so long as a certain baseline is always met, on a consistent basis.

The prompt payment requirement is consistent with the FLSA's stance that the workweek is the basis for determining compliance with minimum wage and overtime requirements. 29 C.F.R. § 778.103. For example, it is not permissible to average hours over two or more weeks, such as by paying straight time for all hours worked in a biweekly pay period consisting of one 50 hour week and one 30 hour week. 29 C.F.R. § 778.104. This is

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 6

not to say that FLSA requires that employees be *paid* on a weekly basis. § 778.106. However, there is a requirement that it be paid regularly and frequently. For example,

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. ***Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.***

*Id*. This is another example of the recognition of the importance of prompt payment to an analysis of whether the wage laws' minimum wage and overtime requirements have been met or not.

The exact cut-off for when a payment is or isn't prompt enough is not a clear line, but if a payment is not made on a regular set payday, there has to be a good reason for the delay. For example, a Pennsylvania district court denied both parties' motions for summary judgment on the issue of whether delaying the plaintiff-firefighters' payment for the final four days of a pay period's overtime is reasonable. *Brennan v. City of Phila*. No. 13-6635 (E.D. Pa. Jun. 21, 2016). However, in so ruling, it contrasted "cases involving intentional delays," including *Klinghoffer*, *Biggs,* and *Martin*, amongst others, with others allowing for a slight delay in payments for justifiable reasons.

There are consequences when an employer fails to abide by the prompt payment requirements. When an employer fails to pay owed wages on regular pay cycles, but then later pays the full amount of wages owed, an award of liquidated damages is still warranted, even though the base wages had been paid. The Eleventh Circuit held that "While the FLSA does not specify when payment of wages must be made, the former Fifth Circuit held that

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 7

liquidated damages are available under the act to an employee if the employer failed to pay wages or over-time on the regular payment date. *Arroyave v. Rossi*, 296 Fed. Appx. 835, 836 (11th Cir. 2008)[1].

As another point where the FLSA makes it clear that timing of payments matters can be seen in regard to the so-called "white collar" (highly compensated employee) exemption. 29 C.F.R. § 541.601. There, the employee is exempt so long as at least part of the duties test is met and receives total annual compensation in excess of (these days) $107,432. *Id*. The regulations specify that the total annual compensation may be prorated for partial years [§ 541.601(b)(3)] but also says that the employee has to receive at least ***$684 per week* plus** enough variable compensation (commissions, etc.) over the course of the calendar year to exceed the total annual earnings threshold. § 541.601(b)(1) (" 'Total annual compensation' ***must include at least $684 per week paid on a salary or fee basis*** as set forth in §§ 541.602 and 541.605. Total annual compensation may also include commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period. …") In other words, a single payment of $200,000 on December 31 would not cut it. By this the FLSA makes it clear that even "highly compensated" employees must be paid a baseline amount on a frequency sufficient to maintain some semblance of personal financial sustainability.

---

[1] citing *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1945); *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) (FLSA requires "prompt" payment of wages); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (liquidated damages available to employees who are not paid when wages are due); *Birbalas v. Cuneo Printing Industries*, 140 F.2d 826, 828 (7th Cir. 1944) (liquidated damages available for overtime wages not paid at payday); *Biggs v. Wilson*, 1 F.3d 1537, 1542-43 (9th Cir. 1993) (wages are late if not paid on payday); and *Seneca Coal Coke Co. v. Lofton*, 136 F.2d 359, 363 (10th Cir. 1943) (liquidated damages apply where overtime not paid as due in regular course of employment).

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 8

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

The case at bar is not a "close call" like the above-cited cases are. Deferred payment was not the Plaintiff's idea or desire. The payments were not just a few days late. And there was no justifiable reason for the delay such as needing data to be accumulated to figure out how much is owed. Defendants violated the "prompt payment" requirement and therefore the minimum wage requirements.

In this case the Defendants did not, for example, pay the Plaintiff $600 a week (40 hours at $15 per hour) and indicate that when things got better financially they might (or might not) give him a big payment. Most weeks, and most semi-months, they simply paid him nothing at all. This does not comport with the spirit or letter of the law.

### B. Policy considerations warrant reconsideration of this issue.

In this case, the Plaintiff's minimum wage claims may ultimately be preempted by his more general unpaid wages claim, in the sense that he may recover the larger of two sets of damages but not duplicative ones. However, as a matter of precedent it is important to set this issue right from a policy perspective. It is important to the functioning of the economy at all levels that employees be legally protected in regard to receiving a baseline amount of wages – certainly at least at or above minimum wage (and more for any to whom an exemption defense might be asserted, whether $684 per week for federal or $1125 per week for New York) - on a predictable, reliable, regular basis.

For all these reasons, Plaintiff asks that the minimum wage claim dismissal be reconsidered and reversed and that he be permitted to proceed with that issue to trial.

### C. In the alternative, Plaintiff requests permission to preserve his rights to appeal this issue.

Acknowledging that trial is currently set for the very near future in this case, and not wishing to delay those proceedings during the pendency of an interlocutory appeal, Plaintiff

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 9

requests that in the event that the Court declines to reconsider and reverse this aspect of the prior Order, that his rights to appeal this issue be preserved. As a final judgment has not yet been rendered in this case this request may be superfluous. Though not preferred, to the extent that an interlocutory appeal would be the only mechanism by which to preserve this right, Plaintiff so moves.

## IV. CONCLUSION

Wherefore, Plaintiff respectfully requests that the Court reconsider the aspect of its Order dismissing Plaintiff's minimum wage claims.

Respectfully submitted, this **29th** day of **October, 2021.**

ANDERSONDODSON, P.C.

*/s/ Penn Dodson*
**Penn A. Dodson, Esq.**
CO Bar No. 54677
*penn@andersondodson.com*
Attorney for Plaintiff

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.andersondodson.com

Clingman v Drive Coffee
Case No. 1:20-cv-01485-RBJ (D. Colo.)

P's Motion for Reconsideration
Page 10